## Case No. 8,045.

### LANE v. The A. DENIKE.

[3 Cliff. 117.] [1]

Circuit Court, D. Massachusetts. May Term, 1868.

COLLISION — INEVITABLE ACCIDENT — WATCHING APPROACHING VESSEL—RIGHT TO COURSE—NEGLIGENCE—DIVISION OF DAMAGES.

1. A schooner in the evening, close hauled, on the port tack, was heading north by west, with the wind west-northwest. A brig on the starboard tack, with the wind at least two points free, was heading south by west half west. Both vessels were in a sea-worthy condition in all respects, and had sufficient lights, and both vessels had lookouts. The speed of the schooner was five or six knots, and that of the brig four or four and one half. When the vessels were at least one hundred and fifty yards apart, the brig ported her helm. Inevitable accident was not set up, and it was *held* not to be a case coming within the eleventh sailing rule.

2. The pilot on the schooner was notified by the lookout that there was a light ahead, upon which he went forward and looked at it for several minutes, and then went aft. It was not pretended that the approaching vessel would have passed to leeward by more than her length. *Held,* that he was negligent in not continuing to watch the approaching vessel.

3. It is not an excuse for the pilot of the schooner that he had a right to keep his course, under the rules of navigation.

4. Nothing in the rules of navigation can exonerate from the consequences of neglect of precautions such as are required by the ordinary practice of seamen, or the special circumstances of a case.

5. A party who negligently casts himself upon an obstruction is not entitled to damages, and the party who inflicts an injury cannot be allowed to defend himself upon the ground that the injured party committed the first error, if the person so committing the act causing the damage had reasonable notice of the error of the other, and means and adequate opportunity to have avoided the disaster.

6. The lookout on the schooner in this case had informed the pilot of the light ahead, saw the brig both before and when her helm was ported, and she attempted to cross the schooner's course. Instead of going aft, the pilot should have observed the necessity for precaution, and also watched the approaching vessel longer, in order to have obtained the same knowledge as the lookout. He could then have ported the schooner's helm in season to have avoided the collision.

7. Vigilance is required from those having the conduct of both vessels, when the circumstances of their approach require caution.

8. In this case it was *held* that there was negligence on both sides, and that the damages should be divided.

[Cited in The Hercules, 20 Fed. 206; The Nereus, 23 Fed. 458.]

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[Appeal from the district court of the United States for the district of Massachusetts.]

The cause of action was a collision on the high seas, and the defence was, that the disaster was occasioned by the mismanagement and negligence of those in charge of the libellant's vessel. The respondent filed a cross-libel. Most of the material allegations in the libel were denied in the answer, and the testimony in respect to the circumstances attending the collision was very conflicting. Libellant's vessel, the brig Clara F. Webster, was bound on a voyage from Rockland, in the state of Maine, to Philadelphia, in the state of Pennsylvania, with a full cargo of granite. The voyage of the respondent's vessel, the schooner A. Denike, was from Baltimore to Boston, and she was laden with a cargo of coal. Pursuing their respective voyages, the vessels came into collision, on the 18th of August, 1866, off Nausett Light, Cape Cod, about half past three o'clock in the morning, and the brig with her cargo on board was sunk, and both vessel and cargo were lost. Injury was also received by the schooner, but the master, at the time he gave his deposition, was not able to estimate the cost of repairs. In the district court, a decree was entered for the libellant [Hiram V. Lane], in the sum of $12,000 damages and costs of suit, and the claimant [John E. Jones] appealed to this court.

F. C. Loring and S. Snow, for libellant.
John C. Dodge, for claimant.

CLIFFORD, Circuit Justice. The theory of the libellant is that the two vessels were approaching each other from opposite directions, and that the collision was occasioned by the failure of the schooner to observe the eleventh sailing rule prescribed by congress, which provides that if two sailing ships are meeting end on, or nearly end on, so as to involve risk of collision, the helms of both shall be put to port so that each may pass on the port side of the other. 13 Stat. 60. The views of the respondent are widely different, as he insists that the eleventh sailing rule has no application to the case whatever. On the contrary, he contends that the disaster was occasioned solely by the unskilful and improper management of those in charge of the brig in porting her helm when there was no risk of collision, and when if both vessels had kept their course they would have passed each other without coming in contact and in perfect safety. He denies that the eleventh sailing rule has any application to the case, for two reasons, which if correct in point of fact would show that the libellant is not entitled to recover the amount allowed in the decree of the district court: first, because the two vessels were crossing within the meaning of the twelfth sailing rule, instead of meeting end on, or nearly end on, as is supposed by

the libellant; second, because the schooner, when she was first seen by those in charge of the brig, was so far to the windward of the brig, that if neither had changed their course the latter would have passed to the leeward of the schooner without risk of collision. The exceptional clause in the twelfth rule provides in effect that when two sailing ships are crossing so as to involve risk of collision, and they have the wind on different sides, if the ship with the wind on the port side is close hauled and the other ship is free, then the latter shall keep out of the way. The argument for the respondent is that the case is controlled by that clause of the twelfth rule which is controverted by the libellant, chiefly, on two grounds: first, he insists that the two vessels were meeting nearly end on, and not crossing, as the case must be to fall within that rule; and, second, he denies that the brig had the wind free, as assumed by the respondent. Disputed matters of fact, therefore, are involved in every issue between the parties, which depend in a great measure upon the conflicting statements of witnesses. Absolute certainty being unattainable in such a case, the statement of conclusions is all that is of any importance to the parties. Analyzed with care, the testimony, in the view of the court, proves that the following were the material circumstances which attended the collision, in addition to those already given in the preliminary statement of the case: the undoubted fact is that it was good weather and not very dark, as the witnesses on both sides agree that it was starlight. Libellant testifies that the wind was west by north, but the better opinion is that it was west-northwest, as it appears that the schooner was heading north by west, and it is fully proved that she was close hauled, and that she would lay within five points of the wind. Statement of the libellant is that the brig was heading south by west half west, so that if the wind was west-northwest, she was off eight and a half points. Full proof is exhibited that the brig was in good condition, well manned, and that she had good lights. The seaworthy condition of the schooner is also conceded, and it is not disputed that she was well manned, but it is strenuously contended that she had no lights burning at the time of the collision. Regarding the point as one of importance, it has been carefully examined, and it appears to the court that the schooner had suitable lights, which might have been seen by those in charge of the other vessel. Both vessels had lookouts, and the lookout of the schooner testifies that he saw the lights of the brig when they were a mile and a half distant, and seven minutes before the vessels came together. His statement also is, that when he first saw the light he reported it to the pilot, and they both state that they saw the light two points over the lee bow of the schooner. Other witnesses confirm that statement, and it appears to be correct. The testimony of the master of the brig also is, that he first saw the light of the schooner one point over the lee bow of his vessel, but in that particular, in the view of the court, he was mistaken, as the better opinion is that the brig, before she ported her helm and luffed up into the wind, was somewhat to the leeward of the schooner. Speed of the schooner was five or six knots, and that of the brig was four or four and a half, and they were both sailing in a smooth sea, with a steady breeze. Inevitable accident is not pretended, and it is clear to the court that it is a case of unmistakable fault, for which one or both parties are clearly responsible. The sailing qualities of the brig are left in some doubt by the testimony, but she was upon the starboard tack, and in the opinion of the court had at least two points free. On the other hand, it is fully proved that the schooner was upon the port tack, and that she was as close to the wind as she would lay; considered in the light of this statement, it is quite clear that the case does not fall within the eleventh sailing rule, as contended by the libellant. Even supposing there would have been actual danger of collision if both vessels had kept their course, which is not admitted, it is certain that they were not meeting end on, or nearly end on, within any reasonable construction which can be given to the language of the eleventh sailing rule. The Constitution, 2 Moore, P. C. (N. S.) 453; Same Case, 10 Law T. (N. S.) 894; The Fingal, 13 Law T. (N. S.) 611; The Concordia, 1 L. R. Adm. & Ecc. 93; Same Case, 12 Jur. (N. S.) 771; The Braga, 14 Law T. (N. S.) 258; The Lady Normanby, 14 Law T. (N. S.) 895. Granting that the two vessels were not meeting nearly end on, as contended by the libellant, then it follows that the brig was in fault, as it was her duty to keep out of the way if there was danger of collision, and if not, she had no right to attempt to cross the bows of the schooner at the risk of collision. When one of two ships is required to keep out of the way, the other is required as a correlative duty to keep her course, subject to certain reasonable and necessary qualifications. Special circumstances may exist in a particular case rendering a departure from the rule necessary in order to avoid immediate danger, and the act of congress, among other things, expressly provides that nothing in these rules shall exonerate any ship * * * from the consequences * * * of the neglect of any precaution which may be required by the ordinary practice of seamen or by the special circumstances of the case. 13 Stat. 61; New York & L. U. S. M. S. S. Co. v. Rumball, 21 How. [62 U. S.] 377. Respondent's own testimony shows beyond controversy that the pilot, when notified by the lookout that there was a light ahead, went forward and looked at it for several

minutes, and then went aft, saying the approaching vessel was going all right. Beyond question he ought to have observed that there was a necessity for precaution, as the lookout does not pretend that the brig would have passed to the leeward more than her length if she had kept her course. The distance of the vessels apart when the brig ported her helm was at least one hundred and fifty yards, and it is not doubted that if the pilot had continued to watch her course as he should have done, the collision would have been prevented. Instead of doing so, however, he turned round and walked aft, virtually leaving the matter in charge of the lookout. He gave the order "hard up," but it was too late to prevent the disaster. The excuse offered for the pilot is, that he had a right to keep his course; but rules of navigation were framed and designed to save life and property, and not for the purpose of promoting collisions. Such were the views of the supreme court long prior to the enactment of the steering and sailing rules, which expressly provide that nothing therein contained shall exonerate any ship from the consequences of the neglect of any precaution required by the ordinary practice of seamen, or by the special circumstances of the case. Common justice forbids that a party who voluntarily casts himself upon an obstruction shall be entitled to damages, and it is equally plain that a party inflicting an injury upon another ought not to be permitted to defend himself successfully against the act, because the injured party committed the first error, if he had seasonable notice of the error and ample means and reasonable opportunity to avoid inflicting any such injury. Experienced as the pilot was, he ought to have prevented the collision by porting the helm of the schooner. Her lookout saw the brig before the error was committed, and was looking directly at her when she ported her helm and attempted to cross the line of the schooner's course, and if the pilot had watched her course for a moment longer he would have had the same seasonable knowledge as was required by the lookout. Vigilance is required of those in charge of both vessels, and where there is negligence on both sides, both must share the consequences. The best judgment I can form in this case is, that there was fault on both sides, and the damages must be divided. No estimate was made of the cost of repairing the schooner, as that was not necessary in the view taken of the case by the court. Unless the parties agree to the amount of the damages, it will be necessary to send the case to a commissioner. Decree reversed, and let a decree be entered that both parties were in fault, and that the damages and costs be divided.